UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
PAUL WATKINS,                                                  :

                 Petitioner,            :         06 Civ. 15222 (PAC) (GWG)

    -v.-                                                     :         <u>REPORT AND
                                                              RECOMMENDATION</u>
ROBERT ERCOLE,                                                :

                                       :
                 Respondent.
-----------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

       Paul Watkins, currently an inmate at Green Haven Correctional Facility in Stormville,

New York, brings this petition <u>pro se</u> for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

On February 15, 2002, a jury convicted Watkins of two counts of Attempted Murder in the

Second Degree under New York Penal Law §§ 110 and 125.25(1), and one count of Robbery in

the First Degree under New York Penal Law § 160.15(2).  On May 22, 2002, Watkins was

sentenced to consecutive prison terms of 20 years for the attempted murder counts, to run

concurrently with a sentence of 10 years for the robbery.

       For the reasons stated below, the petition should be denied.

I.  <u>BACKGROUND</u>

      A.  <u>State Trial Court Proceedings</u>

       On November 20, 2000, Watkins was indicted by a grand jury in the Bronx on numerous

charges, including attempted murder and robbery.  <u>See</u> Affidavit in Opposition to Petition for

Habeas Corpus, filed May 22, 2007 (Docket # 9) ("Resp. Aff."), ¶ 5.  He subsequently filed a

motion asking the court to inspect the grand jury minutes and dismiss the indictment or reduce

the charges against him because of defects in the prosecutor's presentation to the grand jury.  <u>See</u>

Notice of Motion, dated Dec. 29, 2000 (annexed as Ex. 1 to Resp. Aff.). Justice Patricia A. Williams of the New York State Supreme Court ordered that copies of the grand jury minutes be provided to the court, see Decision and Order, dated Jan. 12, 2001 (annexed as Ex. 2 to Resp. Aff.), at 1-2, and on January 26, 2001, she issued a decision holding that the presentation to the grand jury was proper and that there was sufficient evidence to support the charges in the indictment, see Decision and Order, dated Jan. 26, 2001 (annexed as Ex. 3 to Resp. Aff.).

On June 27, 2001, Watkins moved to dismiss the charges against him pursuant to N.Y. Crim. Proc. Law §§ 30.20 and 30.30 on speedy trial grounds, arguing that there were over 180 days countable against the state since the commencement of the action against him. See Notice of Motion, dated June 27, 2001 (annexed as Ex. 4 to Resp. Aff.). Justice Williams denied the motion on September 4, 2001, finding that there were only 111 days chargeable against the state, but she granted Watkins' release, setting bail at $250,000 in cash or by bond. See Decision and Order, dated Sept. 4, 2001 (annexed as Ex. 6 to Resp. Aff.) ("30.30 Dec."), at 6-7. On October 1, 2001, Justice Williams granted the state's request for reargument, but denied their application, see Decision and Order, dated Oct. 1, 2001 (annexed as Ex. 8 to Resp. Aff.), and Watkins was released on bail on October 5, 2001, Resp. Aff. ¶ 9. A bench warrant was issued for Watkins' arrest on November 28, 2001, see Ex. 9 to Resp. Aff., when he did not make a scheduled court appearance, (Dec. 6 Tr. 8-14).[1] He was re-apprehended on December 7, 2001. Resp. Aff. ¶ 11 (citing Ex. 9 to Resp. Aff.)

Before Watkins was returned to court, his trial counsel made a motion to reconsider the

---

[1] The hearing and trial transcripts have been bound into seven volumes filed as Docket ## 11, 12, 13, 14 and 15. We refer to each transcript by the date on the cover page and the notation "Tr.," although some volumes comprise more than one day's proceedings.

decision denying the motion to dismiss the indictment pursuant to N.Y. Crim. Proc. Law §§ 30.20 and 30.30 on speedy trial grounds, or in the alternative for a hearing. See Notice of Motion, dated Dec. 3, 2001 (annexed as Ex. 10 to Resp. Aff.). In the motion, Watkins argued that a cooperation agreement between the Bronx District Attorney's Office and Watkins' co-defendant Jonathan Keitt "clearly indicated that the prosecution was never actually ready for trial during the entire 197 day period previously claimed by the defense, since the prosecution was unwilling to proceed to trial against the defendant without first securing the co-defendant as a witness against the defendant." Id. at 6-7 (emphasis omitted). Justice Williams denied this motion orally on December 6, 2007, finding that there was sufficient evidence that the prosecution could have presented its case against Watkins without the agreement with Keitt. (Dec. 6 Tr. 8-14). Various other pre-trial hearings were conducted in December 2001 and January 2002. See Resp. Aff. ¶ 11.

Watkins' trial took place in January and February 2002. The basic facts of the case presented at the trial are not directly relevant to this petition and thus are summarized only briefly. Sometime after 10:30 p.m. on October 9, 2000, Watkins and Keitt (Watkins' nephew) robbed a grocery store located at 2487 Creston Avenue in the Bronx using a .9 millimeter gun. See Memorandum of Law, dated May 2007 (annexed to Resp. Aff.) ("Resp. Mem."), at 3. Keitt took $9,700 in cash from the register and a cigar box located under the counter. Id. After Keitt left the store with the money, Watkins, who had been holding a gun to one of the store owner's heads, shot that store owner in the chest. Id. Watkins then shot the other store owner three or four times. Id.

On February 15, 2002, the jury found Watkins guilty of two counts of Attempted Murder

in the Second Degree under New York Penal Law §§ 110 and 125.25(1) and one count of Robbery in the First Degree under New York Penal Law § 160.15(2). Resp. Aff. ¶ 11. On May 22, 2002, Watkins was sentenced to two consecutive determinate prison terms of 20 years on the two counts of attempted murder, and to a concurrent, determinate prison term of 10 years on the robbery count. Resp. Aff. ¶ 13.

On March 6, 2002, Watkins, still represented by counsel, filed a motion seeking the following relief: an order setting aside the jury's verdict; an order granting discovery and disclosure of fingerprint comparison evidence; an order directing the District Attorney to submit certain property for the court's in camera inspection; an order directing the District Attorney to make available witnesses the court may require to answer questions, and a sealed, transcribed record of any such proceedings; an order dismissing the indictment pursuant to Brady v. Maryland, 373 U.S. 83 (1963); an order granting the defendant permission to inspect the Grand Jury minutes; and an order dismissing the indictment on the ground that the presentation to the Grand Jury was improper. See Notice of Motion, dated Mar. 6, 2002 (annexed as Ex. 11 to Resp. Aff.). Judge John A. Barone of the New York Supreme Court denied Watkins' motion in all respects in two decisions dated May 22 and June 24, 2002. See Ex. 12 to Resp. Aff.

B. State Court Appeals

Watkins, represented by counsel, appealed his conviction to the Appellate Division, First Department. See Brief for Defendant-Appellant, dated Mar. 5, 2002 (annexed as Ex. 13 to Resp. Aff.) ("Pet. App. Br."). In his appellate brief, Watkins argued that: (1) the trial court erred by allowing the complainant to testify through an interpreter who did not speak the complainant's dialect, and in denying Watkins' request for a mistrial or to strike the complainant's testimony

4

given that the complainant was the only witness corroborating the accomplice's testimony; (2)

the trial court erred by failing to charge the jury on the suggestiveness and inaccuracy of

Watkins' line-up and in-court identification where he was the only person in the line-up wearing

a bright orange shirt and where complainant testified that he saw a "black face"; (3) the

prosecution failed to prove its case beyond all reasonable doubt and used the perjurious

testimony of his accomplice, Keitt, who had previously given written and videotaped statements

to the police that he was never present at the scene of the crime nor a witness to it; (4) the trial

court erred by denying Watkins' motion to suppress a letter he wrote to co-defendant Keitt and

refusing to redact the portion of the letter that refers to the sharing of proceeds as in the past

because the probative value of the letter was substantially outweighed by its prejudicial effect;

(5) the trial court erred by denying Watkins' motion to dismiss the indictment on the basis of

Grand Jury impairment or prosecutorial misconduct where the prosecutor knowingly used the

perjured testimony of an accomplice in both the Grand Jury presentation and trial; and (6) the

trial court erred by sentencing Watkins to two consecutive terms of 20 years where the offenses

of armed robbery and attempted murder arose under a single act.  Id. at 3-4.

Watkins made another motion to the Appellate Division on March 17, 2004, requesting

permission to submit a supplemental brief pro se raising the following arguments: (1) that the

trial court erred in failing to dismiss the indictment on speedy trial grounds; (2) that the

complainant gave false testimony as to the alleged perpetrators of the robbery and about what

was stolen from him; and (3) that the prosecutor acted improperly in the presentation to the

Grand Jury.  See Affidavit in Support of Motion for Permission to File a Supplemental Appeal

Brief, dated Mar. 18, 2004 (annexed as Ex. 15 to Resp. Aff.) ("Pet. Req.").  Watkins also

requested court documents so that he could complete this brief.  See id.  The People opposed the

motion.  See People's Affirmation in Opposition, dated Apr. 2, 2004 (annexed as Ex. 16 to Resp.

Aff.).  On June 3, 2004, the Appellate Division, First Department denied the motion.  Order,

dated June 3, 2004 (annexed as Ex. 17 to Resp. Aff.).

On November 4, 2004, the Appellate Division, First Department affirmed Watkins'

conviction.  See People v. Watkins, 12 A.D.3d 165 (1st Dep't 2004).  The court held that: (1)

"the record fails to support defendant's contentions that the interpreter was unqualified or that he

failed to interpret properly," and there was no prejudice where defendant was able to effectively

cross-examine the witness; (2) there was "no evidence to support defendant's claim that the line-

up was unduly suggestive" or that the trial court's jury instruction on identification was

inadequate; (3) Watkins' arguments regarding the prosecutor's use of "perjured" testimony were

"meritless" because conflicting testimony created a credibility issue for the jury but did not

disqualify the witness; (4) the trial court correctly admitted Watkins' threatening letter to his

accomplice with redactions to avoid prejudicial references to uncharged crimes; and (5) the trial

court "lawfully imposed consecutive terms for the two attempted murder convictions[] since they

involved separate acts."  Id. at 166-67.

Watkins' application for leave to appeal to the New York Court of Appeals was denied

on March 31, 2005.  See People v. Watkins, 4 N.Y.3d 846 (2005).  On June 20, 2005, the New

York Court of Appeals denied Watkins' application for reconsideration of the decision to

denying leave to appeal.  See People v. Watkins, 5 N.Y.3d 771 (2005).

C.  Section 440.10 Motion

On May 19, 2006, Watkins filed a pro se motion to vacate his conviction pursuant to

N.Y. Crim. Proc. Law § 440.10 on the grounds that: (1) the trial court erroneously decided his

N.Y. Crim. Proc. Law § 330.30 without considering the full record, thus creating a jurisdictional

defect, see Writ of Habeas Corpus[2], dated May 19, 2006 (annexed as Ex. 18 to Resp. Aff.)

("440.10 Mot."), ¶ 5; (2) his indictment should have been dismissed pursuant to N.Y. Crim.

Proc. Law § 30.30, id.; (3) his state and federal constitutional rights were violated because the

trial court failed to render a written decision on his speedy trial motion on December 14, 2001,

and thus the issue was not appealable to a higher court, id. ¶ 6; (4) the trial court erroneously

sentenced him based on an incomplete record because a written decision on the speedy trial issue

was not prepared on December 14, 2001, id.; and (5) the trial court violated its jurisdictional

authority and became Watkins' adversary because it did not render a favorable decision on his

speedy trial motion after the prosecutor failed to respond, id. ¶ 7. The People opposed the

motion. See Affirmation in Opposition, dated Oct. 6, 2006 (annexed as Ex. 19 to Resp. Aff.).

On December 6, 2006, Judge Peter J. Benitez of the New York Supreme Court denied

Watkins' Section 440.10 motion on procedural grounds pursuant to N.Y. Crim. Proc. Law

§ 440.10(2)(c) because Watkins "could have raised on his direct appeal the failure of the motion

court to have filed a written decision and, in the alternative, could have appealed from the denial

of both the original and renewed CPL § 30.30 motions." 440.10 Dec. at 4.

Watkins sought leave to appeal this decision to the Appellate Division. See Application

for Leave to Appeal Pursuant to CPL § 460.15, dated Jan. 8, 2007 (annexed as Ex. 21 to Resp.

---

[2] Despite the title of this document, the trial court recognized that it "challenged proceedings resulting in his conviction and sentence" and thus "converted th[e] Writ into a CPL § 440.10 motion to vacate the judgement." Decision and Order, dated Dec. 6, 2006 (annexed as Ex. 20 to Resp. Aff.) ("440.10 Dec."), at 1.

Aff.). The People opposed this request. <u>See</u> Letter from Dimitri Maisonet, dated Mar. 9, 2007 (annexed as Ex. 22 to Resp. Aff.). The Appellate Division, First Department denied leave to appeal on May 1, 2007. <u>See</u> Certificate Denying Leave, dated May 1, 2007 (annexed as Ex. 23 to Resp. Aff.).

      D. <u>The Instant Petition for Writ of Habeas Corpus</u>

      Watkins' original petition is dated July 8, 2006 and was received by the Pro Se Office of this Court on September 25, 2006. <u>See</u> Petition, filed Dec. 18, 2006 (Docket # 2) ("Petition"). The petition seeks a writ of habeas corpus based on the following four grounds: (1) ineffective assistance of both his trial and appellate counsel, <u>id.</u> at 6; (2) the trial court's failure to properly adjudicate his N.Y. Crim. Proc. Law § 30.30 motion and failure of his appellate counsel to raise this issue on appeal, <u>id.</u> at 7; (3) failure of appellate counsel to raise on appeal the issue of complainants' inconsistent identifications of Watkins, <u>id.</u> at 9; and (4) improper admission of testimony of one complainant for the other complainant, who never testified before the Grand Jury or at trial, <u>id.</u> at 11-A. Watkins indicated in his petition, however, that he had not exhausted these grounds for relief in state court. <u>See</u>, <u>e.g.</u>, <u>id.</u> at 6 ("To preserve this issue appellant/petitioner is waiting the outcome of a state Writ of Habeas Corpus connected to a C.P.L. 440.10 so that a Writ of Error Coram Nobus [sic] may be filed."); <u>accord</u> <u>id.</u> at 8-9, 11.

      Watkins also submitted an amended petition dated February 23, 2007. <u>See</u> Amended Petition, filed Mar. 2, 2007 (Docket # 4) ("Am. Pet."). The amended petition seeks a writ of habeas corpus based on the same grounds listed in his counsel's brief to the Appellate Division. <u>See</u> <u>id.</u> ¶ 13; Ex. 1 to Am. Pet. In addition, Watkins lists two additional grounds for relief: (1) "Right to speedy trial base[d] on the Federal Constitutional law; and (2) "Right to be heard on a

lower court proceeding and subsequent right to appeal base[d] on Federal Constitutional law," which he explains involves a state court's duty to "honor and recognize the petitioner['s] right to speedy trial and right to appeal." Am. Pet. ¶ 13.

On March 20, 2007, this Court ordered the respondent to file an answer or motion responding to Watkins' petition. Order, filed Mar. 21, 2007 (Docket # 8). The respondent submitted a response, arguing that the petition should be dismissed because it includes claims that were never raised in state court and is thus a "mixed petition." See Resp. Aff. ¶ 26. On May 23, 2007, this Court issued an Order informing Watkins that a mixed petition – a habeas petition containing both exhausted and unexhausted claims – "must be dismissed in its entirety." Order, filed May 25, 2007 (Docket # 10), at 1. This Court gave Watkins until June 29, 2007, to submit an application to stay his habeas petition so that he can exhaust his remedies. Id. at 2. Watkins submitted an affidavit in response. See Affidavit in Reply to Respondent's Opposition to Petition for Writ of Habeas Corpus, dated June 18, 2007 (Docket # 28). Watkins argued that respondent failed to respond timely to his amended petition and thus is precluded from opposing it, id. at 2, and that he did not need to respond to the May 23 Order because his amended petition was not a mixed petition, id. at 3.

In an Order issued on July 3, 2007, this Court noted that although the amended petition was timely filed, it appeared that the Clerk never served a copy of the amended petition on the respondent, and the Court directed the Clerk to serve a copy of the amended petition on respondent. See Order, filed July 9, 2007 (Docket # 16), at 1. In addition, the Court determined that Watkins was requesting a stay of his habeas case in order to present an additional claim or claims to the state courts through a writ of error coram nobis, and the Court ordered Watkins to

submit a statement by July 31, 2007 listing the claims he sought to add to his petition and the claims he sought to exhaust in state court, or "risk having some of his claims dismissed." Id. at 2. The Court informed Watkins that the respondent was not in default and that he was required to provide the statement outlined in the Order. Id. Watkins' deadline to respond was extended to September 11, 2007, Memorandum Endorsement, filed Aug. 10, 2007 (Docket # 18), but Watkins did not respond to the July 3 Order. Therefore, this Court issued another Order on October 2, 2007, deeming any unexhausted claims in Watkins' petition or amended petition abandoned, treating the amended petition as a supplement to the original petition, and directing the respondent to respond by November 2, 2007 to all remaining, exhausted claims to the extent that respondent had not done so already, and to explain why any claims contained in the petitions are unexhausted. Order, filed Oct. 3, 2007 (Docket # 19). This deadline was later extended to November 16, 2007. Memorandum Endorsement, filed Oct. 23, 2007 (Docket # 20).

The Court subsequently received a letter from Watkins dated September 28, 2007, in which he responded to the July 3 Order by seeking a stay of his habeas petition and listing the claims he sought to exhaust in state court. See Letter from Paul Watkins, dated Sept. 28, 2007 (Docket # 29) ("Pet. Sept. Ltr."). Specifically, Watkins sought to stay his petition in order to exhaust the following claims: (1) "Ineffective Assistance of Appellate Counsel"; (2) "Ineffective Assistance of Trial Counsel"; (3) "C.P.L. § 30.30 issue"; (4) "Illegal Sentence"; (5) "Confrontation issue"; and (6) "Identification issue." Id. at 2. Watkins stated that he did not raise these grounds for relief in his amended petition because the state's highest court had not yet rendered a decision on these matters. Id. On November 16, 2007, this Court issued an Order deeming Watkins' petition to include all claims in his petition, amended petition, and the

September 28 letter to the extent it included new claims. Order, filed Nov. 19, 2007 (Docket # 21). This Court also directed the respondent to submit a supplementary response addressing each claim raised by Watkins, including an explanation of whether the claim is unexhausted and, if possible, why it fails on the merits. Id. The response was submitted on February 21, 2008. See Supplementary Affidavit in Opposition to Petition for Habeas Corpus, filed Feb. 21, 2008 (Docket # 23) ("Resp. Supp. Aff."). Watkins thereafter submitted an affidavit in response. See Affidavit in Reply to Respondent's Supplementary Affidavit in Opposition to Petition for Habeas Corpus, dated Apr. 17, 2008 (Docket # 27) ("Pet. Supp. Aff.").

II. DISCUSSION

Before discussing each of Watkins' claims, we provide some background on the law governing habeas corpus petitions.

A. Law Governing Review of Claims in Habeas Corpus Petitions

A petition for a writ of habeas corpus may not be granted with respect to any claim that has been "adjudicated on the merits" in the state courts unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For a claim to be adjudicated "on the merits" within the meaning of 28 U.S.C. § 2254(d), it must "finally resolv[e] the parties' claims, with res judicata effect," and it must be "based on the substance of the claim advanced, rather than on a procedural, or other, ground." Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001) (citation omitted). As long as "there is nothing in its

decision to indicate that the claims were decided on anything but substantive grounds," a state court decision will be considered to be "adjudicated on the merits" even if it fails to mention the federal claim and no relevant federal case law is cited.  See Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001); accord Rosa v. McCray, 396 F.3d 210, 220 (2d Cir.) ("This standard of review applies whenever the state court has adjudicated the federal claim on the merits, regardless of whether the court has alluded to federal law in its decision."), cert. denied, 546 U.S. 889 (2005).

In Williams v. Taylor, the Supreme Court held that a state court decision is "'contrary to'" clearly established federal law only "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives" at a different result.  529 U.S. 362, 405-06 (2000).  Williams also held that habeas relief is available under the "'unreasonable application'" clause only "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.  A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  Id. at 411.  Rather, the state court's application must have been "objectively unreasonable."  Id. at 409.

Habeas relief is also available from state court decisions based on "unreasonable" factual determinations.  28 U.S.C. § 2254(d)(2).  "The question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold."  Schriro v. Landrigan, 127 S. Ct. 1933, 1939 (2007) (citing Williams, 529 U.S. at 410).  Federal courts are to "presume" that state court

factual determinations are correct, subject to rebuttal by "clear and convincing evidence." 28

U.S.C. § 2254(e)(1). The presumption may also "be set aside if the material facts were not

adequately developed at the State court hearing or if the reviewing court finds that the factual

determination is not fairly supported by the record." Smith v. Mann, 173 F.3d 73, 76 (2d Cir.

1999) (citation omitted), cert. denied, 528 U.S. 884 (1999); accord Durden v. Greene, 492 F.

Supp. 2d 414, 420 (S.D.N.Y. 2007).

   B. Exhaustion

   Habeas corpus relief under 28 U.S.C. § 2254 is available to a petitioner held in state

custody in violation of the Constitution or a federal law or treaty. See 28 U.S.C. § 2254(a).

"Before a federal court may grant habeas relief to a state prisoner," however, "the prisoner must

exhaust his remedies in state court." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see 28

U.S.C. § 2254(b)(1)(A). The Supreme Court has held that:

> [b]ecause the exhaustion doctrine is designed to give the state courts a full and
> fair opportunity to resolve federal constitutional claims before those claims are
> presented to the federal courts, . . . state prisoners must give the state courts one
> full opportunity to resolve any constitutional issues by invoking one complete
> round of the State's established appellate review process.

O'Sullivan, 526 U.S. at 845; accord Smith v. Duncan, 411 F.3d 340, 347 (2d Cir. 2005). Thus, a

petitioner is required to have presented each claim to all available levels of the state courts. See,

e.g., Baldwin v. Reese, 541 U.S. 27, 29 (2004) ("the prisoner must fairly present his claim in

each appropriate state court (including a state supreme court with powers of discretionary

review)" (citations and internal quotation marks omitted)). The petitioner must also have fairly

presented the "federal nature" of each claim to the state courts. Id.; Duncan v. Henry, 513 U.S.

364, 365-66 (1995) (per curiam); Rosa, 396 F.3d at 217.

C.  Watkins' Claims

Watkins raises a number of overlapping claims in his petition, amended petition, and September 28 letter.  We have grouped them into the claims listed below and discuss each to the extent necessary to dispose of his petition.  While some of the claims are unexhausted, we have considered each on the merits as permitted by 28 U.S.C. § 2254(b)(2) and thus find it unnecessary to decide whether to stay consideration of this petition to permit exhaustion of these claims.

1.  Ineffective Assistance of Counsel

In his original habeas petition, Watkins asserts that his trial counsel was ineffective for "fail[ing] to advocate [his] case to the best of [counsel's] knowledge," and that his appellate counsel was ineffective for failing to raise a "meritable issue" on direct appeal and abandoning him during a "pivotal time on direct appeal."  Petition at 6.  He also claims that his appellate counsel was ineffective in failing to raise the speedy trial issue on direct appeal, id. at 7, and in failing to raise the issue of the complainants' differing identifications of him, id. at 9.  Watkins concedes his ineffective assistance of counsel claims are not exhausted and requests a stay of his petition in order to exhaust these claims.  See Pet. Sept. Ltr.; Pet. Supp. Aff. at 7-14.  Indeed, while he claims that he failed to exhaust these claims because he was awaiting the decision on the 440.10 motion, see Petition at 6, he does not explain why he did not raise the issue of ineffective assistance of counsel when he filed his 440.10 motion.  In any event, while these claims have not been raised in the state court and are thus unexhausted, they may be denied on the merits.  See 28 U.S.C. § 2254(b)(2).

a.  Legal Standard Governing Claims of Ineffective Assistance of Counsel.  To show

ineffective assistance of counsel, a petitioner must satisfy both prongs of the two-part test articulated in Strickland v. Washington, 466 U.S. 668, 687-96 (1984). The Strickland test has been characterized as "rigorous" and "highly demanding." Pavel v. Hollins, 261 F.3d 210, 216 (2d Cir. 2001) (internal quotation marks and citations omitted); accord Bell v. Miller, 500 F.3d 149, 155 (2d Cir. 2007) (comparing a successful ineffective assistance of counsel habeas claim to "thread[ing] [a] needle"). To meet the Strickland standards, a petitioner must show (1) "that counsel's representation fell below an objective standard of reasonableness," 466 U.S. at 688, and (2) "any deficiencies in counsel's performance [were] prejudicial to the defense," id. at 692; accord Rompilla v. Beard, 545 U.S. 374, 380, 390 (2005); Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003). In evaluating the first prong – whether counsel's performance fell below an objective standard of reasonableness – "judicial scrutiny . . . must be highly deferential," and the petitioner must overcome the "presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Bell v. Cone, 535 U.S. 685, 698 (2002) (quoting Strickland, 466 U.S. at 689) (internal quotation marks omitted). In order to satisfy the prejudice requirement, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; accord Lynn v. Bliden, 443 F.3d 238, 247 (2d Cir. 2006), cert. denied, 127 S. Ct. 1383 (2007).

     b. Claim That Trial Counsel Was Ineffective. Watkins' conclusory assertion that his trial counsel "failed to advocate . . . to the best of his knowledge," Petition at 6, fails to satisfy his burden under Strickland. Although Watkins maintains that his trial counsel "abandon[ed] his

theory on C.P.L. § 30.30 and [did] not maintain[] that the motion was properly adjudicated," Pet.

Sept. Ltr. at 4, the record does not support that his trial counsel's performance fell below an

objective standard of reasonableness. Specifically, Watkins' trial counsel, Robert Borstein,

successfully moved to inspect grand jury minutes, see Exs. 1-3 to Resp. Aff.; obtained Watkins'

release on bail after filing a motion pursuant to N.Y. Crim. Proc. Law § 30.30(2), see Exs. 4-8 to

Resp. Aff.; renewed his motion to dismiss the indictment on speedy trial grounds, arguing that

the prosecutor had been waiting to obtain a cooperation agreement from Keitt and was never

ready for trial, see Ex. 10 to Resp. Aff.; and litigated a pretrial Wade/Dunaway hearing to

suppress identification evidence and argued that the police arrested Watkins without probable

cause, Resp. Aff. ¶ 11. At trial, Borstein presented the defense that co-defendant Keitt was not

credible in his recitation of the details of the crime (Feb. 6 Tr. 962-1078); moved for a mistrial

arguing that the second interpreter for the testifying complainant had conducted "excessive

cross-colloquy" with the complainant, making cross-examination difficult and violating

Watkins' due process rights (Jan. 28 Tr. 230-31); and moved to have portions of Watkins' letter

to Keitt redacted, see Notice of Motion, dated Jan. 18, 2002 (annexed as Ex. 1 to Resp. Supp.

Aff.) ("Suppress. Motion"). After trial, Borstein moved the trial court to set aside the verdict

pursuant to N.Y. Crim. Proc. Law § 330.30 on speedy trial and prosecutorial misconduct

grounds, see Ex. 11 to Resp. Aff. Watkins has provided no evidence to suggest either that

Borstein abandoned the speedy trial issue or that his performance was otherwise ineffective.

Thus, Watkins' petition should not be granted on the ground of ineffective assistance of trial

counsel.

      c. <u>Application to Claim that Appellate Counsel Was Ineffective</u>. Claims of ineffective

assistance of appellate counsel are also evaluated under the <u>Strickland</u> standard. <u>Smith v.</u>

<u>Robbins</u>, 528 U.S. 259, 285 (2000). Under this standard, "[a]ppellate counsel who files a merits

brief need not (and should not) raise every nonfrivolous claim, but rather may select from among

them in order to maximize the likelihood of success on appeal." <u>Smith</u>, 528 U.S. at 288 (citing

<u>Jones v. Barnes</u>, 463 U.S. 745 (1983)). "[A] petitioner may establish constitutionally inadequate

performance if he shows that counsel omitted significant and obvious issues while pursuing

issues that were clearly and significantly weaker." <u>Mayo v. Henderson</u>, 13 F.3d 528, 533 (2d

Cir.), <u>cert. denied</u>, 513 U.S. 820 (1994). In order to establish prejudice, a petitioner must show

"that there was a 'reasonable probability' that [his] claim would have been successful" on

appeal. <u>Id.</u> at 534 (citing <u>Claudio v. Scully</u>, 982 F.2d 798, 803-05 (2d Cir. 1992), <u>cert. denied</u>,

508 U.S. 912 (1993)).

Watkins has failed to show that his appellate attorney was ineffective. Specifically, on

appeal his attorney raised six arguments, challenging the interpretation of the complainant's

testimony, the jury charge with respect to the suggestiveness of the line-up, the veracity of

Keitt's testimony, the admission of Watkins' letter to Keitt, the trial court's refusal to dismiss the

indictment on the basis of prosecutorial misconduct, and Watkins' sentence. <u>See generally</u> Pet.

App. Br. In addition, appellate counsel sought leave to appeal the Appellate Division, First

Department's decision, <u>see Watkins</u>, 4 N.Y.3d 836, and sought reconsideration of the denial of

leave to appeal, <u>see Watkins</u>, 5 N.Y.3d 771.

Watkins argues that his appellate counsel should have raised the speedy trial issue.

Petition at 7. He also argues that appellate counsel should have raised the fact that one

complainant had not identified him and that the other "gave police a different description [than]

17

what petitioner looks like." Id. at 9.  But Watkins has pointed to nothing in the record demonstrating that the trial court incorrectly decided the Crim. Proc. L. § 30.30 issue.  As for the identification issue, it is unclear even to what legal issue the petitioner is referring.  The fact that an eyewitness did not make an identification is not a ground for appeal.  While a witness's identification may be attacked in argument based on a failure of that witness to make a sufficient description of a suspect, the mere fact that such circumstances occur does not reflect an available issue for appeal.  Thus, Watkins has not made a showing (1) that either issue was so obvious that it should have been pursed instead of weaker issues; and (2) that either would have had a reasonable likelihood of success on appeal.

## 2. Adjudication of Speedy Trial Motion

In ground two of his original petition, Watkins claims that the trial court failed "to properly adjudicate[]" his N.Y. Crim. Proc. Law § 30.30 motion.  Petition at 7.  The New York State Supreme Court denied Watkins' original speedy trial motion, finding that there were only 111 days countable against the government.  See 30.30 Dec.  The court denied Watkins' motion for reconsideration of this decision orally on December 6, 2001, finding that there was sufficient evidence in the record to support the conclusion that the prosecution could have presented its case without Keitt and rejecting Watkins' argument that the agreement with Keitt demonstrated that the prosecution had not been ready for trial.  (Dec. 6 Tr. 8-14).

In his 440.10 motion, Watkins made an number of claims based on the New York Supreme Court's denial of his speedy trial motions pursuant to N.Y. Crim. Proc. Law § 30.30 and its failure to render a written decision on his attorney's pre-trial motion that renewed a motion to dismiss the indictment on speedy trial grounds.  See generally 440.10 Mot.  The

respondent argues that the claims Watkins raised in his 440.10 motion are procedurally barred

from habeas review.  See Supplementary Memorandum of Law, dated Feb. 2008 (annexed to

Resp. Supp. Aff.), at 47-52.

The Second Circuit recently summarized the law governing habeas review of claims

dismissed under state procedural law as follows:

> This court is generally procedurally barred from considering a ruling that "fairly
> appear[s] to rest primarily on state procedural law." Jimenez v. Walker, 458 F.3d
> 130, 138 (2d Cir. 2006) (citation omitted). . . .  To bar federal habeas review,
> however, the state court's decision must rest not only on an independent
> procedural bar under state law, but also on one that is "adequate to support the
> judgment." Jimenez, 458 F.3d at 138.
>
> A state procedural bar is "adequate" if it "is firmly established and regularly
> followed by the state in question" in the specific circumstances presented in the
> instant case.  Monroe v. Kuhlman, 433 F.3d 236, 241 (2d Cir. 2006) (citation
> omitted).  The "guideposts" for analyzing the issue of adequacy, articulated in the
> context of a procedural default occurring at trial, are:
>
>> (1) whether the alleged procedural violation was actually
>> relied on in the trial court, and whether perfect compliance
>> with the state rule would have changed the trial court's
>> decision; (2) whether state caselaw indicated that
>> compliance with the rule was demanded in the specific
>> circumstances presented; and (3) whether petitioner had
>> "substantially complied" with the rule given "the realities
>> of trial," and, therefore, whether demanding perfect
>> compliance with the rule would serve a legitimate
>> governmental interest.
>
> Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003) (citation omitted). The Cotto
> guideposts also apply to testing the adequacy of a procedural default raised in a
> state collateral proceeding.  See, e.g., Clark v. Perez, 450 F. Supp. 2d 396, 426
> (S.D.N.Y. 2006).  Because of comity concerns, a decision that a state procedural
> rule is inadequate should not be made "lightly or without clear support in state
> law." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (citation omitted).

Murden v. Artuz, 497 F.3d 178, 191-92 (2d Cir. 2007), cert. denied, 127 S. Ct. 1083

(2008).  The Second Circuit has noted that "the Cotto factors are not a three-prong test:

they are guideposts to aid inquiry . . . there is no need to force square pegs into round

holes."  Clark v. Perez, 510 F.3d 382, 391 (2d Cir. 2008).

In its denial of Watkins' 440.10 motion, the New York Supreme Court held that Watkins

"could have raised on his direct appeal the failure of the motion court to have filed a written

decision and, in the alternative, could have appealed from the denial of both the original and

renewed CPL § 30.30 motions."  440.10 Dec. at 4 (denying motion pursuant to N.Y. Crim. Proc.

Law § 440.10(c)(2)).  Under N.Y. Crim. Proc. Law § 440.10(2)(c),

> the court must deny a motion to vacate judgment when:  Although sufficient facts
> appear on the record of the proceedings underlying the judgment to have
> permitted, upon appeal from such judgment, adequate review of the ground or
> issue raised upon the motion, no such appellate review or determination occurred
> owing to the defendant's unjustifiable failure to take or perfect an appeal during
> the prescribed period or to his unjustifiable failure to raise such ground or issue
> upon an appeal actually perfected by him . . . .

As for the Cotto factors, application of the first factor is "meaningless" because it asks

"whether the alleged procedural violation was actually relied on in the trial court," Cotto, 331

F.3d at 240, but the violation at issue here "only first occurred when [Watkins] raised an

argument on appeal that he had not raised earlier," Garvey v. Duncan, 485 F.3d 709, 719 (2d Cir.

2008); accord Clark, 510 F.3d at 391 n.4.  As for the second factor, New York courts routinely

deny motions under section 440.10(2)(c) where a defendant has previously failed to raise

arguments on appeal.  See, e.g., People v. Diaz, 14 Misc.3d 1211(A), at *3 (N.Y. Sup. Ct. Oct.

26, 2006); People v. Jean, 14 Misc.3d 1208(A), at *1 (N.Y. Sup. Ct. Oct. 25, 2006).  Finally,

Watkins did not substantially comply with the procedural rule inasmuch as he failed to raise his

claims based on the motion courts failure to issue a written decision at all on appeal.  Federal

courts have upheld this procedural bar as foreclosing review of habeas claims.  See, e.g., Sweet

v. Bennett, 353 F.3d 135, 141 (2d Cir. 2003); Van Stuyvesant v. Conway, 2007 WL 2584775, at *14-16 (S.D.N.Y. Sept. 7, 2007); Kellam v. Hunt, 2007 WL 2005544, at *4 (S.D.N.Y. July 10, 2007); Drayton v. Mazzuca, 2006 WL 762842, at *5-6 (S.D.N.Y. Mar. 24, 2006).

Habeas review would not be barred if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991); see Jimenez v. Walker, 458 F.3d 130, 149 (2d Cir. 2006) (petitioner ineligible for habeas relief on claim where he did "not attempt[] to show either cause and prejudice for the default or a fundamental miscarriage of justice" (citing Murray v. Carrier, 477 U.S. 478, 495-96 (1986))), cert. denied, 127 S. Ct. 976 (2007).  No such cause has been shown here, however, inasmuch as Watkins has not shown that "some objective factor external to the defense" prevented him from complying with the procedural rule.  Murray, 477 U.S. at 488.  Although constitutionally ineffective assistance of counsel can constitute cause for a procedural default sufficient to permit habeas review, attorney error falling short of that standard does not.  Murray, 477 U.S. at 488.  To the extent Watkins argues that his appellate counsel was ineffective for failing to raise the motion court's failure to issue a written opinion on appeal, he has not established cause for the procedural default because such an omission, to the extent that it can be described as a failure, does not rise to the level of a constitutionally ineffective failure.  See section II.C.1.c above.  Nor has Watkins shown that he fits within the "fundamental miscarriage of justice" exception as he has not shown that he is "actually innocent." Carrier, 477 U.S. at 496.  Accordingly, this claim is procedurally barred from habeas review.

In any event, Watkins' claim that the trial court incorrectly adjudicated his speedy trial

motions would have to be denied on the merits.  N.Y. Crim. Proc. Law § 30.30(1)(a) requires

dismissal of an indictment if the prosecution is not ready for trial on a felony within six months

of the commencement of the criminal action.  But "federal habeas corpus relief does not lie for

errors of state law."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Accordingly, "[v]iolations

of state statutory rights are not reviewable by federal habeas courts."  Vasquez v. Walker, 2004

WL 594646, at *4 (S.D.N.Y. Mar. 25, 2004).  Thus courts routinely reject claims based on the

alleged misapplication of section 30.30.  See, e.g., Smith v. LaClair, 2008 WL 728653, at *3 &

n.28 (S.D.N.Y. March 17, 2008) (citing cases); Jones v. Poole, 2007 WL 2456646, at *9

(S.D.N.Y. Aug. 21, 2007); Cadilla v. Johnson, 119 F. Supp. 2d 366, 374 (S.D.N.Y.2000).

Watkins has not asserted any claims based on the right to a speedy trial under the federal

Constitution.  The state court's adjudication of his statutory right to a speedy trial under New

York law does not provide a basis for habeas relief.

### 3.  Hearsay Testimony of Second Complainant

In ground four of his original petition, Watkins claims that the trial court erred in

admitting the hearsay testimony of one complainant as to the statements of a second complainant

before the Grand Jury and at trial.  See Petition at 11-A.  Although this claim was not raised in

state court and is thus unexhausted, it may be denied on the merits.  See 28 U.S.C. § 2254(b)(2).

With respect to any claim of improper hearsay evidence presented to the grand jury, such

a claim is not cognizable on habeas review because Watkins was ultimately convicted by a petit

jury.  See, e.g., Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989) (citing United States v. Mechanik,

475 U.S. 66 (1986)); Dixon v. McGinnis, 492 F. Supp. 2d 343, 347 n.2 (S.D.N.Y. 2007).

As for the statement at trial, Abdul Aljunaid testified that the other complainant,

Mohammed Aljunaid, said he was shot and going to die. (A. Aljunaid: Jan. 28 Tr. 95 ("My brother says, I am hit. He said I'm going to die, my brother said."); Id. at 116 ("He said I am dying, I am dying. I am dead.")). We construe this claim liberally to assert that this testimony was admitted in violation of the Confrontation Clause of the Sixth Amendment.

In Ohio v. Roberts, 448 U.S. 56 (1980), the Supreme Court held that the admission of hearsay statements was not violative of the Confrontation Clause so long as the statements "fall[] within a firmly rooted hearsay exception" or contain "particularized guarantees of trustworthiness," id. at 66. In Crawford v. Washington, 541 U.S. 36 (2005), the Supreme Court held that the Sixth Amendment's Confrontation Clause bars – without regard to reliability – the admission of "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify and the defendant had had a prior opportunity for cross-examination," id. at 53-54. In Davis v. Washington, 547 U.S. 813 (2006), the Supreme Court held that the bar on testimonial hearsay is "so clearly reflected in the text" of the Confrontation Clause that it "must . . . mark out not merely its 'core,' but its perimeter," id. at 824. Based on the decision in Davis, the Second Circuit has made clear that the "reliability analysis" required in Ohio v. Roberts – that is, determining whether statements are "firmly rooted hearsay exception" or contain "particularized guarantees of trustworthiness" – no longer governs. See United States v. Feliz, 467 F.3d 227, 231 (2d Cir. 2006), cert. denied, 127 S. Ct. 1323 (2007). In Feliz, the Second Circuit held that "the Confrontation Clause simply has no application to nontestimonial statements." Id. at 231 (citing Davis, 547 U.S. at 823-24).

Here, Mohammed Aljunaid's statements – "I am hit" and "I'm going to die" – are not testimonial as they have none of the hallmarks of testimonial statements as identified in

<u>Crawford</u>: for example, "<u>ex parte</u> in-court testimony," "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," or "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." 541 U.S. at 51-52 (citations and internal punctuation omitted). Nor do they meet the Second Circuit's test for testimonial statements: that is, statements involving "a declarant's knowing responses to structured questioning in an investigative environment or in a courtroom setting where the declarant would reasonably expect that his or her responses might be used in future judicial proceedings." <u>United States v. Saget</u>, 377 F.3d 223, 228 (2d Cir. 2004), <u>cert</u>. <u>denied</u>, 543 U.S. 1079 (2005). Because Mohammed Aljunaid's statements were not testimonial, there is no Confrontation Clause claim with respect to these statements.

4. <u>Use of Interpreter Who Did Not Speak Complainant's Dialect</u>

Watkins raised on his direct appeal the issue of the trial court's failure to disqualify an interpreter and strike the testimony of one of the complainants given through that interpreter. Thus, it is deemed included in his habeas petition.

Abdul Aljunaid testified at trial through an Arabic interpreter. The first interpreter had great difficulty translating his testimony. (<u>See</u> Jan. 28 Tr. 68-76). After discussions off the record, the court suggested starting over with a new interpreter, and both counsel agreed. (Jan. 28 Tr. 77-78). The court instructed the jury that the previous interpreter "didn't speak the same kind of Arabic that the complainant does," and that they would begin testimony again with a new interpreter. (Jan. 28 Tr. 89). The prosecutor then completed her direct examination of Abdul Aljunaid. (<u>See</u> Jan. 28 Tr. 91-123, 140-47). At one point, when defense counsel Borstein

objected to a "cross-colloquy" between the interpreter and the witness, the trial judge intervened to obtain an answer to the question asked.  (See Jan. 28 Tr. 119).

During Borstein's cross-examination, the trial judge instructed the interpreter to "just interpret the question for the witness.  Don't have a conversation back and forth with the witness, just interpret the question, wait for his answer, and interpret his answer." (Jan. 28 Tr. 170).  When the interpreter told the court there might be some confusion based on his and Abdul Aljunaid's different dialects (Jan. 28 Tr. 171-72), the judge noted that the interpreter did not say he could not  understand the witness, but that he required clarification (Jan. 28 Tr. 172).  After Borstein's objections, the court instructed the witness to answer "yes or no" to questions where possible.  (Jan. 28 Tr. 173).  After continued cross-examination, Borstein moved to strike Abdul Aljunaid's testimony and start again with a new interpreter or for a mistrial based on "continued cross-colloquy between the interpreter and the witness."  (Borstein: Jan. 28 Tr. 230-31; see Borstein: Jan. 28 Tr. 236 (arguing Watkins' rights to a fair trial and confrontation were being "seriously diminished")).  The court denied the motion, noting that the room had poor acoustics; that witness was giving answers that were ultimately responsive; and that Borstein had been able to elicit from the witness that the robbery lasted two minutes or less and that he did not remember his Grand Jury testimony, which conflicted with his testimony at trial.  (Jan. 28 Tr. 233-35).  Borstein moved to bar the same interpreter when the prosecution called Abdul Aljunaid as a rebuttal witness.  (Feb. 6 Tr. 916-17).  The judge denied the motion, noting that, although there were some linguistic problems in previous cross-examination, the defense "was able to get out all of the important information that [it] needed to elicit."  (Feb. 6 Tr. 917-18).

On appeal, Watkins argued that he was deprived of Due Process and the right of

confrontation when the trial court allowed into evidence the complainant's testimony as translated by an interpreter who did not speak complainant's Arabic dialect, and refused counsel's request to declare a mistrial or strike the testimony. See Pet. App. Br. at 15-17. In rejecting his appeal, the First Department noted that "[a]lthough translation of a victim's testimony was slow and difficult because the interpreter and the victim spoke different dialects, and although the interpreter sometimes had to make multiple attempts to translate a question, the record fails to support defendant's contentions that the interpreter was unqualified or that he failed to interpret properly." Watkins, 12 A.D.3d at 166. Furthermore, the court held that "[t]he problems with translation did not prevent defendant from conducting an effective cross-examination, or cause any other prejudice." Id.

The Supreme Court has stated that

[t]he Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him . . . [T]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination. . . . Of particular relevance here, [w]e have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.

Delaware v. Van Arsdall, 475 U.S. 673, 678-79 (1986) (citations, emphasis and internal quotation marks omitted). A violation of the Confrontation Clause occurs when a defendant is "prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" Id. at 680 (quoting Davis v. Alaska, 415 U.S. 308, 318 (1974)).

The right to cross-examination under the Confrontation Clause is not absolute, however.

"[T]rial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about . . . harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."  Van Arsdall, 475 U.S. at 679.  Nonetheless, a restriction on the right to confront an adverse witness may be unconstitutional if it is "'arbitrary or disproportionate to the purposes [the restriction is] designed to serve.'"  Michigan v. Lucas, 500 U.S. 145, 151 (1991) (quoting Rock v. Arkansas, 483 U.S. 44, 56 (1987)).

Defendants have a related right to "a meaningful opportunity to present a complete defense."  Crane v. Kentucky, 476 U.S. 683, 690 (1986) (internal quotation marks and citation omitted).  But "[w]hile a defendant has the right to present a complete defense, that right is not without limits and 'may[,] in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.'"  Hawkins v. Costello, 460 F.3d 238, 243 (2d Cir. 2006) (quoting Chambers v. Mississippi, 410 U.S. 284, 295 (1973)), cert. denied, 127 S. Ct. 1267 (2007).

In New York, the trial judge is vested with the authority to determine whether an interpreter is competent.  See People v. Noor, 302 A.D.2d 480, 480 (2d Dep't 2003) ("hearing court acted within its discretion in determining that the court-appointed certified interpreter was competent"); People v. Frazier, 159 A.D.2d 278, 278 (1st Dep't 1990) ("the trial court acted within its discretion in determining that the interpreter was competent" (citing People v. Catron, 143 A.D.2d 468, 468 (3d Dep't 1988)).  The factual determination made by the trial judge here as to the accuracy of the interpreter is presumed to be correct, see 28 U.S.C. § 2254(e)(1), and has not been rebutted by Watkins.  In addition, the Appellate Division's conclusion that there was no Confrontation Clause violation was not contrary to clearly established law.  The trial

judge replaced the first interpreter who could not effectively translate.  (Jan. 28 Tr. 77-78).

While noting that the second interpreter required some clarification in interpreting, the trial court

found that the interpreter understood and was able to translate the complainant's answers.  (Jan.

28 Tr. 172).  Significantly, the judge found that the defendant was able to effectively cross-

examine the complainant using the second interpreter, noting that Borstein had been able to elicit

from the witness that the robbery lasted two minutes or less and that he did not remember his

Grand Jury testimony.  (Jan. 28 Tr. 233-35; see Jan. 28 Tr. 276 (defense counsel "able to get to

all the points that an experienced Defen[se] counsel would normally make"); Feb. 6 Tr. 918

("while there was some hems and haws because of the linguistic problems . . . Defense was able

to get out all of the important information . . . including purported conflicts between the witness'

testimony in the court and his out-of-court descriptions of the co-Defendant")).  Notably,

Borstein's cross-examination of Abdul Aljunaid was extensive – occurring on two separate trial

days – and elicited a range of testimony on numerous issues. (See Jan. 28 Tr. 148-229, 240-52).

Because Borstein was able to cross-examine the complainant extensively and received

responsive answers to his questions, Watkins was not denied his right of confrontation.  See

generally Torrefranca v. Schriro, 2008 WL 2224669, at *1 (9th Cir. May 28, 2008) (state court's

decision that refusal to appoint interpreter for witness with limited ability to speak English did

not prevent defendant from effective cross-examination not contrary to or an unreasonable

application of clearly established federal law).

        5.  The Line-up

        On his direct appeal, Watkins raised the issue of the suggestiveness of the line-up in

which he was identified and thus we consider it here.  During a pre-trial suppression hearing,

Borstein objected to the line-up – during which one complainant, Abdul Aljunaid, identified Watkins but the other, Mohammed Aljunaid, did not – arguing that it was suggestive because, among other reasons, the fillers wore "neutral colors" while Watkins was wearing a "distinctly orange T-shirt" that "virtually says pick me, I'm wearing international orange," and the complainant was aware there would be a suspect in the line-up. (Borstein: Dec. 17 Tr. 48-49). The court made uncontested factual findings that at the line-up Watkins was allowed to pick his seat number, (Dec. 17 Tr. 58); that there were five fillers who were selected to be of similar appearance, age, and ethnicity to Watkins, (Dec. 17 Tr. 58); that all six participants in the line-up were wearing red baseball caps with the bill of the cap pointed backwards, (Dec. 17 Tr. 58-59); that Abdul Aljunaid picked out Watkins saying, "That's the man who shot my brother and shot at me," (Dec. 17 Tr. 59); that Mohammed Aljunaid did not interact with his brother between identifications and could not make an identification when he viewed the line-up, (Dec. 17 Tr. 59); and that a police detective had told the complainants over the phone that he had a suspect and wanted them to view line-ups with a potential suspect, (Dec. 17 Tr. 59-60). In denying Watkins' suppression motion, the court noted that other participants in the line-up wore distinctive clothing such as a plaid shirt or fully exposed tee-shirt, and that the information that a suspect is contained in the line-up is not sufficient to show undue suggestiveness. (Dec. 17 Tr. 61-62). Upon reviewing the line-up photos, the court concluded that "nothing . . . reflects undue suggestiveness in the arrangement of the [sic] or display of the six individuals in the lineup." (Dec. 17 Tr. 61).

Watkins argued on appeal that he was deprived of his Due Process rights when the trial court refused to suppress his identification and to charge the jury on its suggestive and

speculative nature given that Watkins was the only person in the line-up wearing a bright orange shirt and that the identifying witness had said he saw a "black face."  See Pet. App. Br. at 18-21. The Appellate Division, First Department held that there was "no evidence" to support these arguments.  Watkins, 12 A.D.3d at 166.

A pre-trial identification will be excluded "only if the procedure that produced the identification is 'so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law.'"  United States v. Bautista, 23 F.3d 726, 729 (2d Cir.) (quoting Stovall v. Denno, 388 U.S. 293, 302 (1967)) (alteration in original), cert. denied, 513 U.S. 862 (1994).  Thus, a pre-trial identification implicates the due process clause only when there is "'a very substantial likelihood of irreparable misidentification.'"  Manson v. Brathwaite, 432 U.S. 98, 122 (1977) (quoting Simmons v. United States, 390 U.S. 377, 384 (1968)).  The Second Circuit has enunciated the following test for determining whether an identification procedure violates due process:

> [A] sequential inquiry is required in order to determine whether either the prior identification or an in-court identification of the defendant at trial is admissible. The court must first determine whether the pretrial identification procedures unduly and unnecessarily suggested that the defendant was the perpetrator. . . . If the procedures were not suggestive, the identification evidence presents no due process obstacle to admissibility, [and] no further inquiry by the court is required. . . .  If the court finds, however, that the procedures were suggestive, it must then determine whether the identification was nonetheless independently reliable. . . .  In sum, the identification evidence will be admissible if (a) the procedures were not suggestive or (b) the identification has independent reliability.

Raheem v. Kelly, 257 F.3d 122, 133 (2d Cir. 2001), cert. denied, 534 U.S. 1118 (2002) (citations omitted).

Suggestive identification procedures are those that "'increase the likelihood of

misidentification,' and '[i]t is the likelihood of misidentification which violates a defendant's right to due process.'" Raheem, 257 F.3d at 133-34 (quoting Neil v. Biggers, 409 U.S. 188, 198 (1972)) (alteration in original). The Supreme Court has made clear that the right to due process implicates a defendant's right not to be the object of a suggestive police identification procedure that creates "a very substantial likelihood of irreparable misidentification." Simmons, 390 U.S. at 384; accord Solomon v. Smith, 645 F.2d 1179, 1190-91 (2d Cir. 1981).

The determination of whether a pre-trial identification was suggestive is a mixed question of law and fact. See Sumner v. Mata, 455 U.S. 591, 597 (1982). As a result, the statutory presumption of correctness that exists as to a state court's factual findings on habeas review, see 28 U.S.C. § 2254(e)(1), does not apply in determining the constitutionality of the procedures in this instance. Sumner, 455 U.S. at 597 n.10; accord Alvarez v. Keane, 92 F. Supp. 2d 137, 152 (E.D.N.Y. 2000). The statutory presumption of correctness does apply, however, to any pure determination of fact made by the state courts. See Sumner, 455 U.S. at 597; accord Alvarez, 92 F. Supp. 2d at 152.

Watkins' argument as to the suggestiveness of the line-up is that he was the only person in the line-up wearing orange, and that the witness had testified that he saw a "black face." See Pet. App. Br. at 18-21. The Second Circuit has cautioned that "'[l]ineups in which suspects are the only participants wearing distinctive clothing or otherwise matching important elements of the description provided by the victim have been severely criticized as substantially increasing the dangers of misidentification.'" Raheem, 257 F.3d at 134 (quoting Israel v. Odom, 521 F.2d 1370, 1374 (7th Cir. 1975)). But as the Second Circuit has noted, "there is no requirement that . . . in line-ups the accused must be surrounded by persons nearly identical in appearance."

United States v. Reid, 517 F.2d 953, 966 n.15 (2d Cir. 1975); accord Rayford v. Greene, 2008 WL 941706, at *4 (W.D.N.Y. Apr. 4, 2008); Douglas v. Portuondo, 232 F. Supp. 2d 106, 112 (S.D.N.Y. 2002).

The record in this case includes photographs of the line-up that Watkins argues was unduly suggestive. See Letter from Rither Alabre, filed Aug. 28, 2008 (Docket # 26) (attachment). The Court has examined these photographs and finds no basis to conclude that the decision to admit the line-up identification was an unreasonable application of federal law. All participants in the line-up have a similar skin tone, appear similar in body type, and are seated in a manner that renders them similar in height. All wore red baseball caps with the bill facing backwards. While three participants wore dark colors, one wore a light plaid shirt, and the other wore an exposed white tee-shirt. Thus, the fact that Watkins was the only participant wearing orange did not render the line-up unduly suggestive. Certainly, it was not an unreasonable application of Supreme Court law for the Appellate Division to have so concluded.

As for the argument was that the line-up identification should have been suppressed because the complainant testified that he had seen a "black face" during the trial, it is unclear why such circumstances reflect federal constitutional error. It appears that the argument is that this suggests that the witness was not sure of his identification. Pet. App. Br. at 20. But such an argument goes only to the weight to be accorded the identification, not to its admissibility.

6. Jury Charge on Identification

Watkins argued on appeal that the trial court erred because it "failed to charged the jury as to the suggestive and speculative nature [his] identification." Pet. App. Br. at 18. The trial judge gave the jury a general charge on the issue of identification. (See Feb. 6 Tr. 1117-20). In

addition, the judge gave the jury specific instructions based on Abdul Aljunaid's testimony that he previously identified Watkins in the line-up (see Feb. 6 Tr. 1120-23), and cautioned the jury that the line-up identification "should nevertheless be scrutinized . . . with care" (Feb. 6 Tr. 1122). Specifically, the judge reminded the jurors that Watkins argued that Abdul Aljunaid "was mistaken when he identified him as the perpetrator in the line-up [and] that because of such previous mistake he is now identifying here in court not the actual perpetrator but instead the Defendant he mistakenly identified at the lineup." (Feb. 6 Tr. 1122). Borstein had requested a charge that "indicates the mechanisms by which a line-up could be unfair and more specifically suggestive with respect to a Defendant and even more specifically includes a list of items which include clothing." (Borstein: Feb. 6 Tr. 1153). The trial court rejected this charge and instead decided to use the pattern Criminal Jury Instructions. (Feb. 6 Tr. 1154).

Where an error in a jury instruction is alleged, "it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." Cupp v. Naughten, 414 U.S. 141, 146 (1973). The question is not whether the trial court gave a faulty instruction, but rather "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Id. at 147; see also Estelle, 502 U.S. at 72 (quoting and reaffirming Cupp).

The Second Circuit has summarized the law governing federal habeas review of claimed errors in state jury charges as follows:

> This Court has repeatedly held that "[i]n order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instructions to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by

federal law." Casillas v. Scully, 769 F.2d 60, 63 (2d Cir. 1985); see also Blazic v. Henderson, 900 F.2d 534, 540 (2d Cir. 1990) (quoting Casillas, 769 F.2d at 63) (same); Sams v. Walker, 18 F.3d 167, 171 (2d Cir. 1994) (quoting Casillas, 769 F.2d at 63) (same). The fact that "federal habeas corpus relief does not lie for errors of state law," Lewis v. Jeffers, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990), does not mean, however, that errors under state law cannot result in cognizable violations of a constitutional right to due process. What due process requires will often depend on what state law is. States are free to define the elements of, and defenses to, crimes. See Apprendi v. New Jersey, 530 U.S. 466, 484-87, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); McMillan v. Pennsylvania, 477 U.S. 79, 84-86, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). Once states have promulgated laws to define criminal conduct, however, federal due process protects a defendant from conviction unless he is shown in a fair proceeding to have violated those laws.

Davis v. Strack, 270 F.3d 111, 123 (2d Cir. 2001).

Here, there has been no showing that the trial court's jury instruction either misstated state law or violated a right guaranteed under federal law. It appears that the trial judge used text from New York's standardized Criminal Jury Instructions. In addition, the trial court instructed the jury in accordance with Watkins' argument that he had been mistakenly identified in the line-up. Furthermore, as discussed above, the line-up was not unduly suggestive, and thus no special jury instruction was required beyond what the trial judge provided.

### 7. Admission of Watkins' Letter to Keitt

Watkins also raised on appeal the issue of the trial court's admission of his letter to Keitt. Pet. App. Br. at 29-31. Prior to voir dire, Borstein informed the court that he had seen a letter allegedly sent from Watkins to Keitt. (Borstein: Jan. 15 Tr. 54). In the letter, Watkins asked Keitt to "stand up to testify you committed this and that," because "[t]hey gave you two–to–four," to invoke his Fifth Amendment rights if he is asked questions about Watkins, and to take back his previous statement and say his attorney was not present so he "said what the police wanted." (See Keitt: Jan. 28 Tr. 460). Watkins objected to the admission of the letter on chain

of custody, authentication, and relevance grounds, arguing that "everything in th[e] letter is collateral to th[e] case," and that "it would open up th[e] case to a mini-trial on issues that would completely prejudice the defendant in diverting the jury's main attention to the main issue, which is identification." (Borstein: Jan 15 Tr. 55). He also moved to redact the portion of the letter that referred to "robbing the place to get money for our drug operation" because it violated the court's <u>Molineux</u> ruling. (Borstein: Jan 15 Tr. 58-59). Watkins later filed a motion to suppress the letter on the grounds that it was an involuntary statement and violated his Fourth, Fifth, Sixth, and Fourteenth Amendment rights. <u>See</u> Suppress. Motion. After reviewing the letter and Borstein's motion, the trial court denied the request to suppress the letter (Jan. 15 Tr. 199-200), and, in rejecting the argument that the letter was involuntary, found that the letter "seems to be initiated <u>sua</u> <u>sponte</u> by [Watkins]." (Jan. 15 Tr. 208). The prosecutor later indicated the intent to introduce the letter "as an admission from [Watkins] which shows his consciousness and his participation in this crime." (Jan. 28 Tr. 19). Borstein objected to the admission of the letter (Jan. 28 Tr. 19-33), and upon reviewing the letter and hearing arguments of counsel, the court admitted the letter subject to certain redactions (Jan. 28 Tr. 37-39). The court later ruled that the statement, "Gave you 50% of everything that happened" would be admitted, but the sentence before it, which referred to "everything I've ever done," would not. (Jan. 28 Tr. 302, 307-08, 327). When the letter was introduced, the court instructed the jury to "bear in mind the different interpretation of the words on the page that both counsel will doubtless offer," and that whether they found any of the "street language" in the letter "offen[s]ive" is "irrelevant to any issue in this case." (Jan. 28 Tr. 444).

Watkins argued on appeal that he was deprived of Due Process when the trial court

refused to suppress the letter he had written to Keitt and to redact the portion of the letter in which Watkins referred to the sharing of proceeds as in the past because the probative value was outweighed by its prejudicial effect.  See Pet. App. Br. at 29-31.  The First Department held that the letter was properly admitted as "evidence of consciousness of guilt," Watkins, 12 A.D.3d at 166, and "contained damaging admissions," and that the trial court properly redacted prejudicial portions of the letter that referred to uncharged crimes, id. at 167.

"[E]rroneous evidentiary rulings rarely rise to the level of a constitutional violation." Vega v. Artuz, 2002 WL 252764, at *13 (S.D.N.Y. Feb. 20, 2002) (citing Washington v. Schriver, 255 F.3d 45, 56 (2d Cir. 2001)); see also Brooks v. Artuz, 2000 WL 1532918, at *6 (S.D.N.Y. Oct. 17, 2000) ("Evidentiary rulings by the state trial court are generally a matter of state law and do not automatically rise to the level of constitutional error sufficient to warrant habeas corpus relief." (citations omitted)).  "In order to prevail on a claim that an evidentiary error deprived the defendant of due process under the Fourteenth Amendment he must show that the error was so pervasive as to have denied him a fundamentally fair trial. . . ."  Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985) (citing United States v. Agurs, 427 U.S. 97, 108 (1976)). Habeas relief may only be granted if "the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.  In short it must have been crucial, critical, highly significant."  Collins, 755 F.2d at 19 (citation and internal quotation marks omitted); see Zarvela v. Artuz, 364 F.3d 415, 418 (2d Cir.) ("erroneous evidentiary rulings warrant a writ of habeas corpus only where the petitioner 'can show that the error deprived [him] of a fundamentally fair trial'" (quoting Rosario v. Kuhlman, 839 F.2d 918,

925 (2d Cir. 1988))), <u>cert. denied</u>, 543 U.S. 879 (2004).

There is no basis for habeas relief here because Watkins has not shown error, much less constitutional error.  Under New York law, relevant evidence may be excluded if its probative value is substantially outweighed by its prejudicial effect.  See <u>People v. Scarola</u>, 71 N.Y.2d 769, 777 (1988).  The trial judge admitted the letter to show consciousness of guilt, which is permissible under New York law.  See <u>People v. Person</u>, 26 A.D.3d 292, 294 (1st Dep't 2006).  The letter contains admissions that are relevant and highly probative of Watkins' involvement in the crimes charged.  Any prejudice resulting from the admission of the letter was not "unfair" but rather arose from Watkins' own damaging admissions in the letter.  Furthermore, the judge's instruction made clear that the jury should focus on the differing interpretations of the letter offered by counsel, and the judge redacted portions of the letter that referred to uncharged crimes.  Nothing in the record supports the conclusion that the letter was erroneously admitted, let alone that it violated any federal constitutional right.

### 8. Prosecutor's Use of Keitt's Testimony Given His Inconsistent Statements

Watkins argued on appeal that he was deprived of his Due Process rights when the prosecutor used the allegedly perjurious testimony of Keitt, who had previously given written and videotaped statements that conflicted with his trial testimony, and thus that the prosecution failed to prove its case beyond all reasonable doubt.  See Pet. App. Br. at 22-28.  Watkins also argued that he was deprived of Due Process when the trial court refused to dismiss his indictment on the grounds of Grand Jury impairment and prosecutorial misconduct based on the use of this testimony.  See <u>id.</u> at 32-34.

According to Watkins, Keitt's testimony amounted to perjury because Keitt had offered

three different stories about his involvement or lack of involvement in the crime. Pet. App. Br. at 23. Specifically, he argued that when Keitt was arrested, he claimed that he was not in the store when the robbery took place; that in a videotaped statement Keitt said he entered the store two minutes after Watkins and participated in the robbery; and that at trial Keitt testified that he and Watkins entered the store at the same time and participated in the robbery together. Id. The First Department held that Watkins' arguments regarding prosecutorial misconduct were "meritless," and that the "conflicting statements . . . merely created a credibility issue to be resolved by the trier of fact." Watkins, 12 A.D.3d at 166.

To challenge a conviction based on the prosecutor's use of allegedly false testimony, a habeas petitioner must prove that: "(1) . . . false testimony was introduced, (2) . . . that testimony either was or should have been known to the prosecution to be false, (3) . . . the testimony went uncorrected, and (4) . . . the false testimony was prejudicial in the sense defined by the Supreme Court in Agurs." Shih Wei Su v. Filion, 335 F.3d 119, 127 (2d Cir. 2003) (citing United States v. Agurs, 427 U.S. 97, 103 (1976)).

Accepting Watkins' contention that Keitt provided different stories regarding his involvement in the robbery, "[p]resentation of a witness who recants or contradicts his prior testimony is not to be confused with . . . perjury. It [is] for the jury to decide whether or not to credit the witness." United States v. Bortnovsky, 879 F.2d 30, 33 (2d Cir. 1989) (internal quotation marks and citation omitted). As the Appellate Division noted, inconsistencies in Keitt's testimony involved an issue of credibility for the jury to evaluate.

Furthermore, even assuming that Keitt's testimony was false, Watkins has provided no evidence that the testimony "was or should have been known to the prosecution to be false."

Inconsistencies between grand jury and trial testimony "do not warrant the inference that the prosecutor knowingly used false testimony." Moore v. Greiner, 2005 WL 2665667, at *14 (S.D.N.Y. Oct. 19, 2005) (citing United States v. Hemmer, 729 F.2d 10, 17 (1st Cir.), cert. denied, 467 U.S. 1218 (1984)); accord Charleston v. Senkowski, 1994 WL 617373, *7 (S.D.N.Y. Nov. 7, 1994). Because these inconsistencies were presented to the jury (see, e.g., Feb. 6 Tr. 1033-41A), Watkins has made no showing that the admission of the testimony was prejudicial. Thus, Watkins has not established that he is entitled to a writ of habeas corpus on the basis of the prosecutor's use of perjured testimony.

With respect to any claim of improprieties in the presentation of Keitt's testimony to the grand jury, any such claim must fail because, as noted previously, a claim of improper hearsay evidence presented to the grand jury is not cognizable on habeas review inasmuch as Watkins was ultimately convicted by a petit jury. See Section II.C.3 above.

### 9. Illegal Sentence

Watkins raised the issue of his allegedly illegal sentence on appeal. See Pet. App. Br. at 35-36. In his appellate brief, Watkins argued that the trial court erred in sentencing him to two consecutive sentences on the two attempted murder offenses because all of the offenses for which Watkins was convicted "arose out of single transaction, namely, the use of a gun to take the money, and the use of a gun to fire shots." Id. at 35. In rejecting this argument, the First Department held that the two attempted murder convictions involved separate acts, and thus the sentence to consecutive terms was proper. See Watkins, 12 A.D.3d at 167. Without explicitly citing federal law, a habeas petitioner can alert the state court to a claim's federal nature by doing one of the following: (1) relying on federal cases employing constitutional analysis; (2)

relying on state cases employing a federal constitutional analysis; (3) asserting a claim in terms so particular as to call to mind a specific right protected by the Constitution; or (4) alleging a pattern of facts that is well within the mainstream of federal constitutional litigation. Daye v. Attorney Gen. of State of N.Y., 696 F.2d 186, 194 (2d Cir. 1982) (en banc), cert. denied, 464 U.S. 1048 (1984). But the only argument Watkins raised in the state courts with regard to his sentence was that, as a matter of state statutory construction, his two sentences should run concurrently rather than consecutively because the two crimes arose from the same "act." See Pet. App. Br. at 35-36 (arguing that under N.Y. Penal Law § 70.25(2) his sentences should have been concurrent rather than consecutive).

To the extent Watkins is now attempting to make a federal constitutional argument challenging his sentence, such a claim has not been presented to the state courts and is unexhausted. See, e.g., Levine v. Comm. of Corr. Servs., 44 F.3d 121, 125 (2d Cir. 1995) (constitutional challenge to sentencing dismissed as unexhausted because direct appeal only raised state statutory challenge), cert. denied, 520 U.S. 1106 (1997); White v. Keane, 969 F.2d 1381 1383 (2d Cir. 1992) (where petitioner failed to argue that sentence deprived him of a federal constitutional right in prior state court proceedings, petitioner "failed to exhaust the remedies available in state court, and federal courts need not consider the claim"). Furthermore, Watkins cannot now return to state court to argue that his sentence violated the federal Constitution. See N.Y. Crim. Proc. Law § 440.10(2)(d), 440.20(2). Thus, the claim is procedurally barred from federal habeas review. See, e.g., Gray v. Netherland, 518 U.S. 152, 161-62 (1996) (while claims are deemed exhausted if there are no longer any available remedies in state court, the same procedural default bars a federal habeas court from addressing the claim

on the merits); Bossett v. Walker, 41 F.3d 825, 828-29 (2d Cir. 1994) (same), cert. denied, 514 U.S. 1054 (1995). As Watkins has not demonstrated either cause for his default or actual innocence, the claim that his sentence is illegal should be dismissed based on the procedural default.

In any event, Watkins' sentence does not violate the federal Constitution. Federal habeas courts have held that the question of whether sentences should be consecutive is purely one of state law and thus not a basis for habeas review. See, e.g., Charles v. Fischer, 516 F. Supp. 2d 210, 224 (E.D.N.Y. 2007) ("federal habeas courts have squarely held that claims regarding the imposition of consecutive sentences are purely a matter of state law and are not cognizable on habeas review" (internal quotation marks and citation omitted)); Estwick v. Walker, 2004 WL 1151581, at *8 (S.D.N.Y. May 24, 2004) (same); Heath v. Hoke, 1989 WL 153759, at *3 (S.D.N.Y. Dec. 7, 1989) ("[A] state court's interpretation of state law on concurrent and consecutive sentences is not a question of federal constitutional dimension cognizable in a federal habeas corpus proceeding.").

While the Eighth Amendment prohibits "extreme sentences that are grossly disproportionate to the crime," United States v. Snype, 441 F.3d 119, 152 (2d Cir. 2006) (citing cases) (internal quotation marks omitted); accord Solem v. Helm, 463 U.S. 277, 288-91 (1983); Bellavia v. Fogg, 613 F.2d 369, 376 (2d Cir. 1979), this case is not one of the "rare instances" where a "'reviewing court . . . [is] required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate.'" Bethea v. Scully, 834 F.2d 257, 261 (2d Cir. 1987) (quoting United States v. Ortiz, 742 F.2d 712, 714 (2d Cir.), cert. denied, 469 U.S. 1075 (1984)). It is enough to say that a sentence of 40 years is not grossly disproportionate for a

conviction for two counts of attempted murder.

Conclusion

For the foregoing reasons, Watkins' petition should be denied.

## PROCEDURE FOR FILING OBJECTIONS TO THIS
## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties have ten (10) days from service of this Report and Recommendation to

serve and file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). Such objections (and any

responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon.

Paul A. Crotty, and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any

request for an extension of time to file objections must be directed to Judge Crotty. If a party

fails to file timely objections, that party will not be permitted to raise any objections to this

Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985).

Dated:  September 9 2008
        New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

Paul Watkins
02-A-3628
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

Rither Alabre
Office of the District Attorney, Bronx County
198 East 161st Street
Bronx, NY 10451

42

conviction for two counts of attempted murder.

Conclusion

For the foregoing reasons, Watkins' petition should be denied.

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties have ten (10) days from service of this Report and Recommendation to

serve and file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). Such objections (and any

responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon.

Paul A. Crotty, and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any

request for an extension of time to file objections must be directed to Judge Crotty. If a party

fails to file timely objections, that party will not be permitted to raise any objections to this

Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985).

Dated: September 9, 2008
      New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

Paul Watkins
02-A-3628
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

Rither Alabre
Office of the District Attorney, Bronx County
198 East 161st Street
Bronx, NY 10451